THAT PORTION OF THE CAYUGA NATION OF INDIANS, residing in Canada, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Certain persons styling themselves "That portion of the Cayuga Nation of Indians residing in Canada," presented a claim to the board of audit (which was transferred to the board of claims), for a share of annuities agreed to be paid by the State to said nation by treaties of 1789 and 1795. *Held,* that the claim was properly denied; that the claimants have no personal or associate character authorizing them to present the claim; that the treaty contract was between the State and the Cayuga nation of Indians, and if violated, only the contracting parties, not a citizen of the State or a member of the nation, or any portion of such members, unless recognized by the State as such, could demand satisfaction ; that so long as the State recognizes the tribal organization as existing and deals with it as a nation, the courts and officers of the State must so regard it ; also that if any claim existed it was not a private one, and so was not within the jurisdiction of the board. (§ 2, chap. 444, Laws of 1876.)

(Argued April 17, 1885 ; decided June 2, 1885.)

APPEAL from decision of the board of claims made April 10, 1882, dismissing a claim for a share of certain annuities specified in the opinion.

*James C. Strong* for appellant.

*D. O'Brien,* attorney-general, for respondent. The board of claims had no jurisdiction of the claim. (Laws of 1876, chap. 444, § 2.) This claim does not come within the designation of a private claim against the State under the act of 1876. (*Case of the N. Y. Indians,* 5 Wall. 761; *N. Y.* v. *Dibble,* 21 How. 366 ; *Worcester* v. *Georgia,* 6 Pet. 515 ; *McKay* v. *Campbell,* 2 Saw. 118.) These claimants stand in the same relation to this State as any independent political community would occupy. (*McKay* v. *Campbell,* 2 Saw. 118 ; *U. S.* v. *Osborne,* 6 id. 406 ; *Ryan* v. *Knorr,* 19 Hun, 540.) It is only through the intervention of his tribe or nation acting in that capacity, that an Indian can be recognized. (*Hastings* v. *Farmer,* 4 N. Y. 293 ; *Strong* v. *Waterman,* 11 Paige, 607 ;

*Dole* v. *Irish*, 2 Barb. 639; *Elk* v. *Wilkins*, 112 U. S. 94.) The act creating the board of claims does not contemplate the consideration by that tribunal of Indian affairs, or questions arising thereunder, another tribunal already having jurisdiction of those matters. (Laws of 1841, chap. 234; *Thomas* v. *U. S.,* Dev. 29; *Meade* v. *U. S.,* 2 Ct. of Cl. 224.)

DANFORTH, J. This proceeding was instituted before the board of audit in February, 1883, and afterward, by statute, transferred to the board of claims. The facts stated were substantially the same as those in *People, ex rel. " That portion of the Cayuga Nation of Indians residing in Canada,"* v. *The Board of Commissioners of the Land Office,* just decided by this court.* The appellant claimed to recover *first,* $448,000 as their share of all the annuities promised by the State to " The Cayuga Nation of Indians," by the treaties of 1789 and 1795, falling due since 1810; or, *second,* for a share of those accruing since June 1, 1849, or, failing in that, *third,* for a share of the annuities accruing since June 1, 1877; or, that being denied, then, *fourth,* for a share of the annuity becoming due June 1, 1883, and thereafter forever, according to the stipulations of those treaties.

The board of claims had no choice. They rejected the whole and each part of the claim; and among many serious obstacles in the way of a recovery, they pointed out one so obvious and insurmountable as to be justified without argument. The title to the proceeding indicates that whoever the claimants are, they have no personal, or even associate character; they assume to represent no one, and it is not pretended that they are authorized by statute to sue. If we look below the title, we find the cause of action is a treaty stipulation between " the State of New York " and " the Cayuga Nation of Indians." Its purpose was the acquisition of the Indian title to lands within this State, by the payment of a certain sum of money annually to that nation. It concerned, on one side, the general inter-

* *Post,* p.

ests of the State, and, on the other, the whole body of the Cayuga Nation.   Within any meaning of the words, therefore, the transaction was public, and in no sense private.   The treaties were made by competent authority, and are obligatory upon both parties.   But if violated by either, the other contracting party can alone demand satisfaction, and neither a citizen of the State, nor a member of the "Indian Nation," nor any portion of those members, unless recognized by the State as such, can complain.   (*Same plaintiffs* v. *Comm'rs, supra.*) *   If, as the learned counsel for the appellant contends, the relator has "neither a country nor a government, nor independent functions or powers," it does not thereby acquire individual or general rights.   If it has separated from its tribe, it is immaterial.   So long as the State recognizes the tribal organization as existing, and deals with it as a nation, the courts and officers of the State must so regard it.   The relator, however, still claims to be a portion of the nation, and so admits its actual existence.   The claim it puts forward has no color, except from that fact, nor has it any title or interest separate from that of its tribe.   If the claim exists at all, it is not a private one, and, consequently, the board of claims properly dismissed it.   (Laws of 1876, chap. 444, § 2.)

The order appealed from should be affirmed.

All concur; FINCH, J., in result.

Order affirmed.